Burdge *v.* Walling.

PAUL W. BURDGE, administrator *de bonis non &c.* of Phebe Murphy, deceased,

*v.*

ALFRED WALLING, JR.

1. Where there is a bequest to one person, and, "in case of his death," or "in case of his death without issue," to another person, such and similar expressions, unexplained by the context of the will, are to be confined to the event of death happening before the period of payment or distribution, *i. e.,* the death of the testator.

2. Where A. bequeathed to her son T. all of certain property, "except as follows: In the event of my son Timothy dying without issue, it is my will that two thousand dollars be equally divided between my sister Nancy" * * * "and my brother Richard. In the event of my brother Richard's decease before coming in possession of this legacy, it is my will that his son, John

Burdge *v.* Walling.

Wesley, or his heirs, receive five hundred dollars, and the remainder to go to my sister Nancy or her heirs."—*Held*, that the testatrix made it manifest that she intended to provide for the event of the death of her son without issue, after her death, and that as Richard, Nancy and John Wesley died before Timothy, the $2,000 must be distributed among the heirs of Nancy and John Wesley in their respective proportions.

On motion to dismiss the bill under Rule 224.

*Mr. Edward Q. Keasbey,* for the complainant.

*Mr. Alfred Walling, Jr., pro se.*

The Chancellor.

The object of the bill and the motion to dismiss it, is to speedily obtain a construction of the will of Phebe Murphy, deceased. No objection is made because of the lack of necessary parties to the suit.

Mrs. Murphy died in 1853, and her will, which is without date, was admitted to probate on the 2d day of November, in the same year. After making provision for the payment of debts, the will continues in these words :

"Item. I give and bequeath unto my son Timothy all the property left by my late husband, or such of it as may remain after my decease, except as follows :

"Item. In the event of my son Timothy dying without issue, it is my will that two thousand dollars be equally divided between my sister Nancy, of Monroe county, New York, and my brother Richard, of New York city.

"Item. In the event of my brother Richard's decease before coming in possession of this legacy, it is my will that his son, John Wesley, or his heirs, receive five hundred dollars, and the remainder to go to my sister Nancy or her heirs."

The sister, Nancy, and the brother, Richard, and Richard's son, John Wesley, all died before Timothy. Timothy survived his mother, and died in July, 1887, without issue. Nancy left children and the children of deceased children, who are her heirs-at-law, and John Wesley left three children (one of them the complainant), who are his heirs-at-law.

During his life Timothy invested $2,000 of the moneys of his father's estate that he took under his mother's will, upon bond and mortgage, and during his life used only the income therefrom. That fund, invested upon mortgage, has now come to the hands of the defendant as executor of the will of Timothy, and a share of it is claimed by the complainant.

The defendant insists that the provision of the will for the gift over, in the event of the death of Timothy without issue, is within the settled rule that where there is a bequest to one person, and, "in case of his death," to another person, such and similar expressions, unexplained by the context of the will, are to be confined to the event of the death happening before the period of payment or distribution. *Hawk. Wills 254; 2 Rop. Leg. 607; 2 Wms. Ex. 1260; 3 Jarm. Wills (R. & T. ed.) 606.*

The reasoning upon which the rule is founded is the inconsistency of treating as a contingent event that which of all others is the most certain, and the leaning of the courts in favor of vesting, and against a construction which will postpone the absolute enjoyment and keep in doubt and suspense the nature of the interest bestowed.

The English courts, after some conflict of opinion, hold that this rule is not applicable where there is an immediate bequest to any person, "and in case of his death without children," to another, but that in such case, if at any time, whether before or after the death of the testator, the legatee shall die without leaving a child, the gift over takes effect. The reasoning is, that the event is not certain but contingent, and it would be importing a meaning and adding words to the will if it were to be construed to import as a condition, which is to enable the bequest over to take effect, that the death of the first legatee without children must happen before some particular period. *Edwards* v. *Edwards, 15 Beav. 357; Gosling* v. *Townshend, 17 Beav. 245; Johnston* v. *Antrobus, 21 Beav. 556; O'Mahoney* v. *Burdett, L. R. (7 H. L.) 388; 3 Jarm. Wills (R. & T. ed.) 648.*

This departure from the rule has not, however, been recognized in this state. In *Pennington* v. *Van Houten, 4 Hal. Ch. 272, S. C. on appeal, Id. 745,* a testator gave the residue of his prop-

erty to his son, and directed his executors to deal with the estate as by the will he instructed them until his son should become of age, and then limited the property over in case the son should die having no children, and it was held that the son took absolutely upon attaining his majority. Succeeding this case came *Williamson* v. *Chamberlain, 2 Stock. 373*, and *Wurts* v. *Page, 4 C. E. Gr. 365;* then *Baldwin* v. *Taylor, 10 Stew. Eq. 78, S. C. on appeal, 11 Stew. Eq. 637*, where the testator provided concerning bequests to his children that " If any of them shall die leaving heirs their portion shall go to such heirs, and if not, it shall be divided equally among my surviving children," and it was held, as to the share of a son who died without issue after the death of the testator, that he had taken absolutely. In *Denise* v. *Denise, 10 Stew. Eq. 163*, where the will divided the residuary estate among seven children, and provided, " In case any of my said seven children last named should die without leaving lawful issue, then, in that case, I order that the share of such as may die without issue to be divided" &c., a child died before the testator, leaving lawful issue, and it was held that there was a gift over, by implication, to that child's issue, and that they took, but that if the child had survived the testator he would have taken absolutely. In *Yawger* v. *Yawger, 10 Stew. Eq. 216*, the provision was, "And should any of my children die not leaving lawful issue the shares that would be due to them to be equally divided among my living children and the survivors of them," and it was held that the payment was not suspended beyond the testator's death. In *Barrell* v. *Barrell, 11 Stew. Eq. 60*, where the residuary estate was given to four children to be divided among them, "And in case of the death of any one or more of my children without leaving lawful issue," then over, but if " any of my children shall die leaving lawful issue living, such issue to take " &c., the testator was held to have intended to give each child an absolute estate, subject to be defeated by the death of the child in the testator's life. *Lafoy* v. *Campbell, 15 Stew. Eq. 34.*

Unless, then, there be something in the will before me to indicate an intention on the part of the testatrix to qualify the estate

Burdge *v.* Walling.

given to Timothy, I must hold, in obedience to the rule above stated, that, upon the death of his mother, he took absolutely. It will therefore be necessary to examine the will to ascertain if the testatrix has evinced such an intention. That which at first may seem trivial and inconsiderable will often make such an intent manifest. In *Billings* v. *Sandom, 1 Bro. C. C. 393,* there was a bequest of £1,000 to A, "*and,* in case of her demise," £800 to B and £200 to C, and Lord Thurlow held that the testator intended that a share of his bounty should go to A and also to B and C; that the word "and" in the bequest implied this, and that, therefore, A should take a life estate and B and C the remainder. In *Nowlan* v. *Nelligan, 1 Bro. C. C. 489,* the bequest was:

"I give and devise unto my beloved wife H. N. all my real and personal estate. I make no provision expressly for my dear daughter, knowing that it is my dear wife's happiness, as well as mine, to see her comfortably provided for, but, in case of death happening to my said wife, in that case I hereby request my friends S. and H. to take care of and manage to the best advantage for my daughter H. all and whatsoever I may die possessed of."

Lord Thurlow held that the words "in case of death" here used meant dying at any time. Sir William Grant said of the case (*Cambridge* v. *Rous, 8 Ves. 22*) that it was evident that the testator intended that the daughter should take some benefit, and that she could only get it by the limiting of her mother to a life estate. In *Lord Douglas* v. *Chalmer, 2 Ves. Jr. 501,* the testatrix bequeathed her residuary personal estate for the use of her daughter F., and in case of F.'s death to the use of F.'s children. In a codicil the testatrix gave a ring to F. and her wearing apparel to A., or if A. should be dead before her, then over. It was held that F. took only a life estate in the residuary personal estate, because the codicil made it manifest that when the testatrix intended to give an absolute legacy, defeasible upon the death of the legatee before her, she declared such intention, and that circumstance raised a strong presumption that if her meaning had been the same in relation to F. she would have used similar words, and, in addition, that the gift of the ring was unnecessary, and incon-

sistent with an intent to give F. an absolute estate in the residue, but quite consistent with an intention that she should take the residue for life only. In *Duhamel* v. *Ardovin, 2 Ves. Sr. 162,* a testator left his property to his son charged with an annuity to his widow, " but should the hand of death fall on my *widow* and son," then over. Lord Cranworth held that the event of death intended could not happen in the lifetime of the testator because death was to come to his *widow.*

I think, after a careful examination of the will before me, that Phebe Murphy intended that the gift over to her brother and sister, or their heirs, was to take effect upon the death of Timothy without issue after her death. It appears to me that if she had intended merely to substitute her brother and sister for her son, if he should have died without issue before her, the substitution would have been as extensive as the gift to the son, and not have been confined to $2,000. I do not think that she contemplated that her son would die before her without issue, because, in that event, she would die intestate of that portion of the gift to him which was not included within the substitution. Her purpose, evidently, was to dispose of her entire estate by her will. The inclination of the courts is against a construction of a will that will result in partial intestacy. The contingent provision for the brother and sister is in the form of an exception from the estate and interest granted to the son. Its language imports a taking of the entire fund by the son subject to the loss of $2,000. That loss was to occur by the happening of the contingency of his dying without issue. By the law, if he should die without issue before the testatrix, the legacy to him would lapse, and the loss would be total. In such case he would not take so as to be in position to lose. In order to take and be subject to the exception from his legacy he must survive the testatrix.

The predicament that the testatrix desired to avoid was her son's taking the property bequeathed to him and then dying without issue, having made disposition of the entire property to the exclusion of those of her blood. She evinces a concern to provide against this situation by the careful provision she made for takers at her son's death, and in this very provision she

manifests the contemplation of a distant time. First, her brother and sister were to take the $2,000. But they might die before Timothy. In that case the heirs of the sister were to take three-fourths, and the son of Richard, the brother, one-fourth of the $2,000. But even Richard's son might die before Timothy. That event is also provided for by the direction that his heirs shall take in his stead. Such precise, careful provision indicates the contemplation of a distant future event, more remote than the death of the testatrix, and possibly as remote as the death of her own and her son's generations. The testatrix could hardly have intended the provision in question to be for the event of the death of her son, her sister, her brother and her brother's son, before her, and not have had reference to the death of her son after her death.

In the case of *Child* v. *Giblett, 3 Myl. & K. 71*, a testator bequeathed the residue of his property to his daughters S. and E., and provided that, in case of the death of either, the whole should go to the survivor of them ; and, in the event of their marrying and having children, then to the child or children of them or the survivor of them, if such child or children should attain the age of twenty-one years, but if not, then to the children of G. S. and E. survived the testator, and then S. died without having married, and bequeathed her property to E. Sir John Leach held that the bequest did not absolutely vest in S. and E. on the death of the testator, but continued subject to the executory bequest over to G. He said : " The testator cannot possibly have intended that the children of ' G.' should take in the event of a marriage of his daughters, and their death without children in his lifetime, and that they should not take in the event of a marriage of his daughters and their dying without children after his decease. That would not be a rational distinction."

My conclusion is, that Timothy did not take the $2,000 absolutely, at the death of his mother, and that, as he died without issue, the $2,000 must be distributed to the heirs of Nancy and John Wesley, in their respective proportions.

The motion will be denied.